The parties in this matter, prior to the hearing before the Deputy Commissioner, submitted an Agreement for Compensation (I.C. Form 21) which was approved by the Industrial Commission on 31 December 1991. The defendants submitted an Application to Stop Payment (I.C. Form 24) which was approved by the Industrial Commission on 13 April 1992. At the hearing before the Deputy Commissioner, the parties submitted an Order on Pre-Trial Conference, dated 20 January 1993. These documents, with their Stipulations, are incorporated by reference as if fully restated herein.
Regarding the plaintiff's motion of February 2, 1994 to exclude the testimony and affidavit of Ms. Hubrich, the undersigned affirm the Deputy Commissioner's decision to exclude that evidence attributing statements to the person with whom she spoke by phone as proof of the facts contained in those statements.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission makes the following Findings of Fact, Conclusions of Law and Award:
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 53 years old, with a date of birth 20 May 1940. For his education, plaintiff had completed the ninth grade. For his work history, plaintiff had worked for 30 years as a welder/electrican. Plaintiff began working for defendant in 1987 as a welder/electrician. Plaintiff was a very good employee.
2. Plaintiff sustained an admittedly compensable injury by accident on 17 July 1990. The accident occurred when the plaintiff touched a piece of brass which was still hot. Although plaintiff was wearing a welding glove, the heat from the metal caused a severe burn and laceration of his fourth (little) finger.
3. As a result of the accident, plaintiff suffered a partial laceration of the flexor tendon of the fourth finger. Plaintiff initially sought treatment at the emergency room and from Dr. David Ciliberto. On the day of the accident, Dr. Ciliberto performed surgery to repair the tendon. Plaintiff received follow-up examinations from Dr. Ciliberto for about six weeks, and the last examination was on 9 October 1990.
4. Plaintiff was out of work for two days as a result of the accident. Plaintiff returned to work on 19 July 1990 and worked at his regular job for approximately nine months, through 25 April 1991 (the date disability began according to the Form 21). In April 1991, plaintiff left defendant-employer's employment without explanation as to why he was leaving. Mary Johnson, owner of defendant-employer, and Billy Thompson, plaintiff's supervisor, testified that they did not know why plaintiff left work. Their testimony was corroborated by the fact that no Agreement for Compensation was made until November 1991 and plaintiff did not claim that defendants refused compensation in 1991, indicating that defendants did not know that plaintiff was claiming disability until long after he had left the job.
5. Plaintiff began to receive treatment from Dr. John Ritchie on 5 April 1991 (nine months after the accident). Dr. Ritchie recommended amputation of the fourth finger at the PIP joint. The surgery was performed on 25 April 1991 (the second surgery). Plaintiff recovered well from the surgery, and it was Dr. Ritchie's early opinion that plaintiff could return to work on approximately 17 May 1991 (three weeks after the surgery). On 17 May 1991, Dr. Ritchie excused plaintiff to remain out of work until he could hold a hammer with a firmer grip. On 7 June 1991, Dr. Ritchie excused plaintiff from work for four additional weeks; and on 9 July 1991, Dr. Ritchie ordered an EMG. Dr. Richard Bey performed an EMG/Nerve Conduction Studies on 26 July 1991; and at this time, plaintiff suffered from mild, generalized sensorimotor neuropathy. After the Nerve Conduction Studies, Dr. Ritchie did not examine plaintiff for about six weeks. Plaintiff returned on 18 September 1991, and Dr. Ritchie scheduled plaintiff for a repeat surgery to relieve a neuroma of the fourth finger. The surgery was performed on 10 October 1991 (the third surgery). At a follow-up examination on November 7, 1991, plaintiff reported "no complaints." On November 7, 1991, plaintiff was released to return to work at light duty, with restrictions for six weeks of no excessive use of the left hand and no lifting or using tools which required full use of both hands. The restriction was not for plaintiff to perform strictly one-handed work, as is demonstrated on a video tape. In the opinion of Dr. Ritchie, plaintiff was capable of using his left hand for some purposes.
6. In the Summer of 1991, between the second and third surgeries, and for a period of 16 weeks from approximately the middle of June and into the first week of October, plaintiff worked for a real estate company, Snyder Realty, cleaning homes and yards after they were vacated by tenants. Plaintiff lifted bags, put them into a truck, and drove the truck. Plaintiff's wife and sons also worked with him for the realty company at this job. When the parties initially signed the Agreement for Compensation on 4 November 1991, after the third surgery, but a few days before plaintiff was released to return to work, the agreement provided for a specific period of disability. On December 12, 1991 the parties amended the average weekly wage on the Agreement for Compensation and defendants agreed to pay plaintiff temporary total disability compensation from 25 April 1991 and continuing for necessary weeks. Plaintiff did not report to defendant that he had worked periodically during the summer. Plaintiff testified that his net income for the summer was $200.00. However, the deputy commissioner found this testimony was not credible, and that plaintiff made at least $500.00. Based on the credible evidence of record and the deputy commissioner's firsthand observation of the witness at the hearing, the undersigned find that plaintiff made at least $500.00. During the summer of 1991, by a preponderance of the evidence, plaintiff had the physical ability to earn some wages.
7. After the third surgery, plaintiff was released to return to work with restrictions on 7 November 1991. At this time defendant-employer, which had previously provided light duty work immediately after the accident, had a job available for plaintiff within his restrictions, and defendant-employer made an effort to contact plaintiff to offer him this job. In November 1991, Mr. Johnson and Ms. Hubrich believed that they had offered the job to plaintiff, but that plaintiff had refused because he had other employment. This belief was corroborated by the fact that in December, 1991, plaintiff contacted defendant regarding his benefits under a 401K Retirement Plan, but plaintiff did not ask if any jobs were available. After 7 November of 1991, plaintiff had the physical ability to earn wages in some employment, the wages he had earned prior to the injury, and failed to prove, by a preponderance of the evidence, that he was unable to obtain employment.
8. Plaintiff testified at the hearing regarding his employment and employment abilities. During a period from approximately March through early May of 1992, plaintiff worked for PPM in South Carolina, earning $1,923.75. He worked as a welder for three different projects but was laid off from one and quit another because of the heavy lifting required, including helping to lift a 100-pound chain. Between November of 1991 and May of 1992, plaintiff tried to build a deck on his house but was unable to hammer because the vibration of the board hurt his hand, causing him to drop the board a lot of times. He tried to help his son roof his garage but fell off because he could not use his hand to regain his ballance. At one point, he tried to use a sledge hammer, but when he used his left hand, he dropped the hammer, bruising his big toes.
9. Although plaintiff described some things he could not do with his hand, he had worked and was capable of returning to work with restrictions from 7 November 1991 through 23 April 1992. Defendant had available a job within plaintiff's restrictions which he could have obtained if he had made an effort to obtain the employment. Plaintiff did not make a reasonable effort under the circumstances to obtain this employment, because he did not notify defendant-employer that he was released to return to work and he did not ask defendant-employer for a job. When asked at the hearing why he never contacted defendant-employer after his release to return to work in November of 1991, plaintiff replied, "I never think about it. I never get in my mind to call and find out."
10. In the spring of 1992 plaintiff went to Pittsburgh to work. He voluntarily left his employment there to come back for the hearing before the Deputy Commissioner in January of 1993. In Pennsylvania plaintiff ran a bulldozer for one and one half months until the work ran out. He was able to operate the bulldozer without problems, making around $400 to $500 per week usually, with a low of $200 per week at times. Plaintiff also worked as a welder for Minnotte, making between $18 and $39 per hour. Plaintiff could do the job if he did not need to lift and hold a piece with his left hand. Of all the jobs in Pennsylvania, plaintiff was laid off from only one because he could not do the job, rigging; plaintiff was unable to steady himself with one hand and do the lifting with the other.
11. Plaintiff was paid temporary total disability compensation from 25 April 1991 through 23 April 1992. On 23 April 1992, defendants stopped payment of benefits with approval of the Industrial Commission. In May of 1992, after these benefits were stopped, defendant-employer offered plaintiff a job within his restrictions; but plaintiff refused, and told defendant-employer that he had other employment. From 24 April 1992 through 22 February 1993, plaintiff was capable of returning to work, and had in fact returned to work.
12. In the Winter of 1991 to the Spring of 1992, plaintiff was receiving temporary total disability compensation. During this time Dr. Ritchie noticed calluses on plaintiff's left hand which indicated that he was using the left hand; but because of the pattern of the calluses, the use of the left hand was in a guarded manner. During this time, plaintiff obtained employment as a welder. Plaintiff did not notify defendant-carrier of this employment, and he continued to receive full benefits while working.
13. Dr. Anthony DeFranzo began treatment of plaintiff on 23 February 1993. Dr. DeFranzo initially provided conservative treatment with medication. By 15 March 1993, plaintiff had suffered a substantial change of condition due to painful digital neuromas in the amputated left small finger that, as Dr. DeFranzo opined, temporarily and totally disabled plaintiff from his employment. Dr. DeFranzo performed surgery on that date at the fifth digit or the fourth finger for excision of ulnar neuromas, and implantation of the nerve into muscle tissue. Plaintiff did well after surgery, and Dr. DeFranzo expected plaintiff to return to work at light duty on or about 6 April 1993. Sometime before 4 May 1993, plaintiff returned to work as a roofer. The treatment provided by Dr. DeFranzo was necessary as a result of the accident of 17 July 1990, and largely relieved plaintiff's pain and shortened his period of disability.
14. The undersigned find that from 23 February 1993 to 5 April 1993, plaintiff was unable to perform his regular employment with defendant-employer or obtain any other employment. From 6 April 1993 and continuing, plaintiff was capable of returning to work, and had in fact returned to work.
15. On April 8, 1992 Dr. Ritchie was of the opinion that plaintiff had reached maximum medical improvement and retained an 80 percent permanent partial impairment to the use of his fourth finger and a five percent permanent partial impairment to his left elbow and shoulder. Dr. Ritchie testified that the accident of 17 July 1990 could have "aggravated" the elbow and shoulder — plaintiff, in testimony, also related the problems with his elbow and shoulder to his finger — and it is found that these conditions resulted from the accident.
16. Regarding plaintiff's permanent partial disability, the undersigned find that greater weight should be accorded the opinion of Dr. Anthony DeFranzo, because he was the last treating orthopedic surgeon, and performed the last surgery. Dr. DeFranzo did not report any permanent partial impairment to plaintiff's elbow or shoulder, but he was of the opinion on August 14, 1993, approximately five months after he had performed surgery on plaintiff, that plaintiff retained a 15 percent permanent partial impairment to his left hand. Based on this opinion, the undersigned find that as a result of the accident of 17 July 1990, plaintiff retains a 15 percent permanent partial impairment to his left hand, and no continuing permanent partial disability to his elbow or shoulder. This finding of permanent partial impairment is made without prejudice to plaintiff's right to reopen his case pursuant to N.C.G.S. § 97-47 after the date of Dr. DeFranzo's rating.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. As a result of the injury by accident 17 July 1990, plaintiff was entitled to temporary total disability compensation at the rate of $379.03 per week from 25 April 1991 to 7 November 1991, except for the 16 week period in the summer of 1991 when plaintiff was entitled to temporary partial disability compensation. N.C.G.S. §§ 97-2(6), 97-29, and 97-30; Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
2. Due to a subsequent substantial change of condition, plaintiff is entitled to compensation for temporary total disability at the rate of $379.03 per week from 23 February 1993 to 6 April 1993, or 6 1/7 weeks. Said compensation is subject to a credit as provided below. N.C.G.S. §§ 97-2(6); 97-47.
3. As a result of the injury by accident of 17 July 1990, plaintiff is entitled to permanent partial disability compensation for 30 weeks at the rate of $379.03 per week due to a 15 percent permanent partial impairment to the left hand. Said payment shall be subject to a credit as provided below. N.C.G.S. § 97-31(12).
4. Defendants are entitled to a credit against compensation due to overpayment of temporary total disability compensation paid to plaintiff for 24 weeks, from 7 November 1991 to 23 April 1992, beyond the period of his actual disability, and for the amount of $333.33 overpayment of compensation paid to plaintiff for the 16 weeks plaintiff worked in the Summer of 1991 when plaintiff earned $500.00 in wages and should have received temporary partial disability compensation instead of temporary total disability compensation. Therefore, defendants are entitled to a credit in the amount of $379.03 per week for 24 weeks and in the amount of $333.33. N.C.G.S. §§ 97-42; 97-30.
5. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of the injury by accident of 7 July 1990. Said medical expenses shall include treatment provided to plaintiff by Dr. Anthony DeFranzo. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff, in one lump sum, additional temporary total disability compensation in the amount of $379.03 per week for the period of temporary total disability between 23 February 1993 through 5 April 1993 (6 1/7 weeks) following his change in condition, or $2,328.33, subject to the credit provided below and the attorney's fee hereinafter approved.
2. Plaintiff was entitled to 16 weeks of temporary partial disability compensation in the Summer of 1991 at the rate of $379.03 per week, or $5,731.20. However, he received $6,064.53 from defendants during those 16 weeks at the temporary total disability compensation rate, for which defendants are due a credit of $333.33.
3. Defendants shall pay plaintiff, in one lump sum, permanent partial disability compensation in the amount of $379.03 per week for 30 weeks, or $11,370.90, as a result of the 15 percent permanent partial impairment of his left hand, subject to the credits provided herein and attorney's fee hereinafter approved.
4. Defendants shall receive additional credit of $9,097.72 for 24 weeks of temporary total disability compensation paid at the rate of $379.03 per week to plaintiff from 7 November 1991 to 23 April 1992.
5. Defendants shall pay all medical expenses incurred by plaintiff as a result of the injury by accident of 17 July 1990, including medical treatment provided by Dr. Anthony DeFranzo, when the bills for said expenses have been submitted to and approved by the Industrial Commission, or otherwise approved in accordance with the rules of the Commission.
6. An attorney's fee in the amount of 25 percent of all cash compensation due plaintiff is hereby approved for plaintiff's counsel, which shall be deducted and paid directly to plaintiff's counsel.
7. Defendants shall pay all costs, including an expert witness fee in the amount of $350.00 to Dr. John Edward Ritchie.
 S/ ___________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ J. HOWARD BUNN, JR. COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JRW/jss/md